**UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT**

_____

No. 16-3912

**Maria Bentley,** *et al.,*
Petitioners,
v.
**Joseph Gerace,** *et al.,*
Respondents.

_____

Petition for Writ of Certiorari
(V.I.S.Ct. Civ. No. 2015-0046)

**RESPONDENTS' BRIEF IN OPPOSITION TO
PETITION FOR WRIT OF CERTIORARI**

_____

Lee J. Rohn, Esquire
Rhea R. Lawrence, Esquire
Counsel for Respondents
Lee J. Rohn and Associates, LLC
1101 King Street
Christiansted, St. Croix
U. S. Virgin Islands 00820-4933
(340) 778-8855 Telephone
(340) 773-2954 Facsimile

**RESPONDENTS' RESPONSE BRIEF IN OPPOSITION TO PETITION FOR WRIT OF *CERTIORARI***

## TABLE OF CONTENTS

I.     Introduction and Procedural History...............................................................1

II.    This Court Should Not Grant *Certiorari*.......................................................3

A.     Petitioner failed to establish that this Court has *certiorari* jurisdiction over the V.I. Supreme Court's opinions after H.R. 6116…………………..………3

1.     Congress stripped this Court of *certiorari* jurisdiction over this case………3

*a.*    The *Bason* panel's opinion is not binding…………………………………...4

b.     The *Bason* panel's *dictum* was legal error that conflicts with Supreme Court precedent, the plain language of the statute, and Congressional intent……...6

2.     Petitioners failed to show a "final order" from which *certiorari* jurisdiction lies……………………………………………………………………….17

III.   THE COURT SHOULD EXERCISE ITS DISCRETION AND DECLINE TO ACCEPT *CERTIORARI* JURISICTION EVEN IF IT DETERMINES THAT IT HAS JURISDICITION…………………………………..………20

# TABLE OF AUTHORITIES

**Cases**

*Banks v. Int'l Rental & Leasing Corp*., 680 F.3d 296 (3d Cir. 2012)………..……16

*Burstein v. Ret. Account Plan for Employees of Allegheny Health Educ. and Research Found*., 334 F.3d 365 (3d Cir. 2003)………………………………….....6

*Cannon v. Univ. of Chicago*, 441 U.S. 677 (1979)………………………………....7

*Cash Distributing Co. v. Neely*, 947 So.2d 286 (Miss. 2007)……………....…..16

*Cohen v. Beneficial Indus. Loan Corp*., 337 U.S. 541, 543 (1941)……...……18, 19

*Commonwealth v. Cross*, 726 A.2d 333 (Pa. 1999)………………………………16

*Cox Broad. Corp. v. Cohn*, 420 U.S. 469 (1975)……………………….…17, 18

*Defoe v. Phillip*, 702 F.3d 735 (3d Cir. 2012)……………………………17, 18, 19

*Eiseler v. United States*, 338 U.S. 189 (1949)………………………………..…4

*Hamden v. Rumsfeld*, 548 U.S. 557 (2006)………………………………..…….8, 9

*Hodge v. V.I. Telephone Corp*., 2014 WL 1508493 (V.I. Super. Ct. Apr. 11, 2014………………………………………………………………...……15

*International Bhd. Of Boilermakers v. Kelly*, 815 F.2d 912 (3d Cir. 1987)…….….4

*Johnson v. Williams*, 133 S. Ct. 1088 (2013)……………………………………..16

*Kulwicki v. Dawson*, 969 F.2d 1454 (3d Cir. 1992)………………….......18, 19

*Limitaco v. Camacho*, 549 U.S. 483 (2007)…………………………………....10

*Lincoln Elec. Sys. v. Neb. Pub. Serv. Comm'n*, 655 N.W.2d 363 (Neb. 2003)...…16

*Lundborg v. Keystone Shipping Co*., 981 P.2d 854 (Wash. 1999)………….…16

*Mariana v. Fisher*, 338 F.3d 189 (3d Cir. 2003)……………………………………...6

*North Carolina v. Rice*, 404 U.S. 244 (1971)………………………………………5

*People v. Dunlap*, 975 P.2d 723 (Colo. 1999)…………………………………….16

*Petersen v. Golden Orange Centers, Inc.*, 2014 WL 7525517 (V.I. Super. Ct. Sep. 25, 2014)…………………………………………………………………..15

*Public Interest Research Grp. of N.J., Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111 (3d Cir. 2003)……………………………………………………………….6

*Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574 (1999)………………….....……5

*Santos v. Guam*, 436 F.3d 1051 (9th Cir. 2006)…………………………………....8

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422 (2007)...……..5

*Slack v. McDaniel*, 529 U.S. 473 (2000)…………………………………...……6, 7

*State v. Montano*, 77 P.3d 1246 (Ariz. 2003)…………………………………..16

*Stratos v. Dep't of Pub. Welfare*, 439 N.E.2d 778 (Mass. 1982)………………....16

*State v. Gaitan*, 37 A.3d 1089 (N.J. 2012)………………………………...……16

*State v. Robinson*, 82 P.3d 27 (Mont. 2003)………………………………….....16

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998)………………….……5

*United Indus., Serv., Trans., Prof'l & Gov't Workers of N. Am. Seafarers Int'l Union ex. rel. Bason v. Gov't of the Virgin Islands*, 767 F.3d 193 (3d Cir. 2014)…………………………………………….……..3, 4, 5, 6, 7, 13, 15, 16, 17

*United Public Workers of Am. v. Mitchell*, 330 U.S. 75 (1947)……………...…..5

*Virgin Islands v. John*, 654 F.3d 412 (3d Cir. 2011)………………………...……17

*Zatco v. California*, 502 U.S. 16 (1991)……………………………………….13

iii

## Statutes

4 V.I.C. § 32……………………………………………………………….…….3

5 V.I.C. § 547……………………………………………………….…1, 3, 21

28 U.S.C. § 1254………………………………………………...……..18

28 U.S.C. § 1257…………………………………………………...…17, 18

28 U.S.C. § 1291……………………………………………..…..17, 18

28 U.S.C. §1292………………………………………………………..17

48 U.S.C. § 1613…………………………………….…3, 4, 8, 14

H.R. 6116, Pub. L. 112-226 (2012)…………...……3, 6, 7, 8, 11, 12, 13, 14, 16, 17

Pub. Law No. 87-189, § 3……………………………………………..7

## Rules

3d Cir. IOP 9.1……………………………………………….…..5

3d Cɪʀ. L.A.R. 112…………………………….………………..17, 18, 21

Fᴇᴅ. R. Aᴘᴘ. P. 28…………………………………………..…….4

Fᴇᴅ. R. Aᴘᴘ. P. 35………………………………………………..4

V.I.S.Cᴛ.R. 4…………………………………………………..4

## Other Authorities

Congressional Record, 112th Congress, 2nd Session, Vol. 158, No. 145, pages H6353-6355[1]……………………………………………………11, 12

---

[1] https://www.congress.gov/congressional-record/2012/11/14/house-section/article/h6353-1?q=%7B%22search%22%3A%5B%22h.r.+6116%22%5D%7D&r=6.

Charles A. Wright and Arthur R. Miller, *et al.*, 18B FED. PRAC. & PROC. JURIS. § 4478.5 (2d ed., 2016 supp.)…..............................................................6

# I.  INTRODUCTION AND PROCEDURAL HISTORY[2]

Over ten years ago, on June 9, 2005 Respondents/Plaintiffs Joseph Gerace and Victoria Vooys, d/b/a Cane Bay Beach Bar, filed this action against Petitioners/Defendants Maria Bentley, David Bentley, CB3, Inc., Warren Mosler, Chris Hanley, and Chrisnos Cane Bay, LLC, seeking civil justice in the local Virgin Islands court system.  At the time Respondents filed suit, they resided in the Virgin Islands.  Almost eight years after this litigation commenced they were forced to leave the Virgin Islands because the economy had collapsed and they needed to seek employment stateside to survive.  (*E.g*., Appx.7.)

On March 1, 2013—over three years ago—Petitioners filed a motion to force these indigent plaintiffs to post a cost bond totaling $6000 or face dismissal of the lawsuit.  (Appx.6.)  Respondents objected to posting the bond and argued that the cost bond statute, 5 V.I.C. § 547: (1) did not apply to this case because they were residents at the time the complaint was filed; (2) cannot be enforced against an indigent plaintiff; and (3) violated the separation-of-powers doctrine embodied by the Revised Organic and as well as several provisions of the United States Constitution.  (Appx.7-8.)  The Superior Court ultimately ordered these indigent plaintiffs to post a cost bond of $1050 each without conducting an

---

[2] The V.I. Supreme Court recounted the procedural history of this case that lead to a non-merits dismissal because Respondents were indigent and could not afford to post a cost bond under 5 V.I.C. § 547.  (App.6-9.)

indigence hearing and dismissed their case when they could not post the bond by the trial-court-imposed deadline.  (Appx.6-7.)

On August 22, 2016, the V.I. Supreme Court reversed the trial court's dismissal of the case for failure to post a cost bond and remanded for further proceedings.  (Appx.26.)  The V.I. Supreme Court noted that the Superior Court had committed independent reversible error in failing to properly address all of Respondents' objections and arguments.  (Appx.10.)  The V.I. Supreme Court also implicitly agreed that the Superior Court committed independent reversible error by failing to conduct an indigence hearing, which also would have required a reversal and remand before ruling on an as-applied due-process challenge. (Appx.13 at n.1.)  The V.I. Supreme Court concluded that, because the "case has languished for over a decade, including two years without a ruling on a motion to dismiss that gave rise to the appeal," that it would decide Respondents' arguments that the Superior Court had failed to address.  (Appx.10.)  It decided the constitutional challenges because remanding the case would not provide Respondents full relief.  (Appx.13 at n.1.)  The V.I. Supreme Court—after considering the argument of the parties and the Government of the Virgin Islands—held that the statute violated the Equal Protection and Privileges and Immunities Clauses of the United States Constitution.  (Appx.26.)

The Government of the Virgin Islands—the party charged with defending the constitutionality of Virgin Islands Statutes—elected not to petition this court for a writ of *certiorari* to challenge the V.I. Supreme Court's holding that § 547 is unconstitutional.

## II.    THIS COURT SHOULD NOT GRANT *CERTIORARI*

**A.    Petitioner failed to establish that this Court has *certiorari* jurisdiction over the V.I. Supreme Court's opinions after H.R. 6116.**

**1.    Congress stripped this Court of *certiorari* jurisdiction over this case.**

On December 28, 2012, the President of the United States signed into law H.R. 6116, Pub. L. 112-226 (2012), which eliminated the *certiorari* jurisdiction of this over decisions of the Virgin Islands Supreme Court and replaced it with direct review by the United States Supreme Court.[3]   Section 3 of H.R. 6116, entitled "Effective Date," provides that "[t]he amendments made by this Act apply to cases commenced on or after the date of the enactment of this Act," *i.e.*, December 28, 2012.  In *United Indus., Serv., Trans., Prof'l & Gov't Workers of N. Am. Seafarers Int'l Union ex. rel. Bason v. Gov't of the Virgin Islands*, in *dictum*, a panel of this Court indicated that H.R. 6116 did not eliminate jurisdiction over any case that had already been commenced in the *Superior Court* as of that date, as opposed to being commenced in the Virgin Islands Supreme Court under, for example, 4 V.I.C. § 32

---

[3] *See, e.g.,* 48 U.S.C. § 1613 (2016).

or V.I.S.Cᴛ.R. 4, or by filing a Petition for Writ of *Certiorari* with the Third Circuit under the pre-amended 42 U.S.C. § 1613.[4]  Respondents agree with the Brief of the *Amicus Curiae* Virgin Islands Bar Association filed in Case No. 152721, filed June 26, 2016, ECF Doc. 003112336903, that the *Bason* opinion on H.R. 6116 was a non-binding advisory opinion and should be revisited.[5] Respondents, in the alternative, if necessary, contend that the *Bason* opinion should be revisited *en banc* under Federal Rule of Appellate Procedure 35.[6]

### a.    The *Bason* panel's opinion is not binding.

The *Bason* panel dismissed the petition for writ of *certiorari* because the case became moot on appeal, which renders the remainder of the opinion *dictum.* "A moot case is not a 'case' within the meaning of Article III."[7]  "A case is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome."[8]

The sole substantive issue in *Bason* was whether Earnest Bason, a former government employee, was entitled to reinstatement of his employment, but he

---

[4] *See United Indus., Serv., Trans., Prof'l & Gov't Workers of N. Am. Seafarers Int'l Union ex. rel. Bason v. Gov't of the Virgin Islands*, 767 F.3d 193, 210 (3d Cir. 2014).

[5] Respondents join in that Brief to the extent permissible under Fᴇᴅ. R. Aᴘᴘ. P. 28(i).

[6] If this Court accepts *certiorari* in this case, Respondents intend to file a timely petition under Fᴇᴅ. R. Aᴘᴘ. P. 35 for hearing of the jurisdictional issue *en banc*.

[7] *See Eiseler v. United States*, 338 U.S. 189, 194 (1949).

[8] *See Int'l Bhd. Of Boilermakers v. Kelly*, 815 F.2d 912, 915 (3d Cir. 1987).

died during the pendency of the legal proceeding.[9]    "Bason's death clearly moot[ed] any reinstatement claim on his behalf."[10]    The *Bason* panel, in fact, dismissed the petition for writ of *certiorari* based on mootness, which was a threshold jurisdictional question.[11]

The mootness holding renders the remainder of the *Bason* opinion *dictum* and an advisory opinion, as it was not necessary or appropriate to affirmatively decide that the panel had *certiorari* jurisdiction as a precursor to dismissing the petition as moot because there was no "case" or "controversy" to decide.[12] Although a court has discretion to choose among threshold grounds to *deny audience to a case*, it does not have discretion to affirmatively decide important issues first and then conclude it lacks the threshold requirement of subject matter jurisdiction after it decides these other issues.[13]    Dismissal short of reaching the merits means that the court will not "proceed at all" to an adjudication of the cause.[14]    Although one panel of the Third Circuit generally may not overrule a previous panel's precedential opinion under IOP 9.1, a subsequent panel is not

---

[9] *See Bason*, 767 F.3d at 214.

[10] *See id.*

[11] *See, e.g., Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998).

[12] *See, e.g., United Public Workers of Am. v. Mitchell*, 330 U.S. 75, 89 (1947); *North Carolina v. Rice*, 404 U.S. 244, 246 (1971).

[13] *Cf., e.g., Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007); *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 585 (1999).

[14] *See Sinochem Int'l Co.,* 549 U.S. at 431.

bound by *dictum* in an earlier opinion.[15]  Thus, the new panel in this case is free to depart from *Bason* and evaluate its own subject-matter jurisdiction.[16]

>    **b.    The *Bason* panel's *dictum* was legal error that conflicts with Supreme Court precedent, the plain language of the statute, and Congressional intent.**

Section 3 of H.R. 6116, entitled "Effective Date," provides that "[t]he amendments made by this Act apply to *cases commenced* on or after the date of the enactment of this Act," *i.e.*, December 28, 2012.  The *Bason* panel concluded that "cases commenced" referred to any case *filed in Superior Court* before the effective date.  Respondents contend that the *Bason* panel's construction of "cases commenced" as meaning the date of the original action in the Superior Court is inconsistent with the U.S. Supreme Court's decision in *Slack v. McDaniel*.[17]

In *Slack*, the Supreme Court expressly held that when the application of a statute is triggered by the commencement of a case, the relevant "case" for a statute directed to the court of appeals is the one initiated in the appellate court.[18]  H.R. 6116 is directed to the appellate courts and is triggered by the commencement

---

[15] *See Mariana v. Fisher*, 338 F.3d 189, 201 (3d Cir. 2003) (citing *Burstein v. Ret. Account Plan for Employees of Allegheny Health Educ. and Research Found.*, 334 F.3d 365, 375–76 (3d Cir. 2003)).

[16] *See* Charles A. Wright and Arthur R. Miller, *et al.*, 18B FED. PRAC. & PROC. JURIS. § 4478.5 (2d ed., 2016 supp.); *see also Public Interest Research Grp. of N.J., Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 118 (3d Cir. 2003).

[17] *See Slack v. McDaniel*, 529 U.S. 473, 482 (2000).

[18] *See id.*

of a case, therefore, *Slack* unequivocally and unambiguously controls the interpretation of H.R. 6116.[19]  The Supreme Court held:

> While an appeal is a continuation of the litigation started in the trial court, it is a distinct step.  We have described proceedings in the courts of appeals as "appellate cases."  Under AEDPA, an appellate case is commenced when the application for a COA is filed.  ***When Congress instructs us (as Lindh says it has) that application of a statute is triggered by the commencement of a case, the relevant case for a statute directed to appeals is the one initiated in the appellate court***.[20]

Congress is presumed to be familiar with existing case law like *Slack* when it legislates.[21]  Moreover, no other territorial-court-review statute has been interpreted contrary to *Slack* or consistent with *Bason* that Respondents are aware of.  All previous appellate-jurisdiction transfer statutes excluded from immediate transfer—at most—pending appeals already filed with the appellate court and did not attempt to exclude from immediate transfer appeals from the trial court that could be filed at some unknown time in the future.  For example, Congress specified that the First Circuit would retain jurisdiction only over appeals already taken, not cases commenced at the trial court level, when it provided for direct review of Puerto Supreme Court decisions by the United States Supreme Court.[22]  When Congress divested the District Court of the Virgin Islands from appellate

---

[19] *See id.*

[20] *See id.* (citations omitted and emphasis added).

[21] *See Cannon v. Univ. of Chicago*, 441 U.S. 677, 699 (1979).

[22] *See* Pub. Law No. 87-189, § 3.

jurisdiction over appeals taken from the Superior Court, it stated that the District Court would retain jurisdiction only over those appeals then pending before it.[23] Yet when Congress did not specify a "cases commenced" savings claims with *Guam*, in *Santos v. Guam*, the Ninth Circuit determined that Congress intended for an immediate transfer of jurisdiction from the Ninth Circuit Court to the United States Supreme Court, even in those cases already fully briefed, argued, and simply awaiting issuance of a decision.[24]  In other words, the debate is generally between whether, on the effective date of the statute, that pending appeals are saved, or whether appellate jurisdiction is simply extinguished, *not whether cases might be appealed to the jurisdictionally-stripped appellate court dozens of years later*.

The *Bason* panel attempted to distinguish cases like *Slack* and *Santos* by pointing to *Hamden v. Rumsfeld*.[25]  *Hamdan* does not support the *Bason* panel's decision because it was a *habeas corpus* case related to the unique situation of the detainees held in Guantanamo Bay, Cuba.[26]  In *Hamden*, the Supreme Court refused to apply a jurisdiction-stripping subsection of a statute retroactively to cases pending in any court, including itself, which would have deprived

---

[23] *See* 48 U.S.C. § 1613a(d).

[24] *See Santos v. Guam*, 436 F.3d 1051, 1053 (9th Cir. 2006).

[25] *See Hamden v. Rumsfeld*, 548 U.S. 557 (2006).

[26] *See id* at 575.

jurisdiction over a case *to any court at all*.[27]  It based its decision on the inference that Congress did not intend to destroy jurisdiction over pending cases where the statute was silent about whether the jurisdiction-stripping provision applied to the pending cases, while other subsections of the same statute included express retroactivity language that applied to pending cases.  By doing so, the Supreme Court avoided other constitutional problems with the statute—like the absolute denial of all *habeas* rights to detainees held in military tribunals—though this construction.[28]  *Hamdan* itself expressly distinguished cases—like this one—where there was simply change in which court that was to hear the case on appeal, which does not implicate "retroactivity" that destroys substantive rights.

Unlike the statute at issue on *Hamden*, H.R. 6116 is not a jurisdiction-stripping statute designed to deprive *all courts in general* from having jurisdiction over a *habeas corpus* case to deny detainees access to constitutionally guaranteed *habeas corpus* rights.  H.R. 6116 is a jurisdiction-shifting statute that does not implicate substantive rights, *i.e.*, H.R. 6116 simply shifts *certiorari* jurisdiction from the Third Circuit to the United States Supreme Court.  This Court should

---

[27] *See id*. at 578.

[28] *See id*. ("We have explained, however, that, unlike other intervening changes in the law, a jurisdiction-conferring or jurisdiction-stripping statute usually 'takes away no substantive right but simply changes the tribunal that is to hear the case.'  If that is truly all the statute does, no retroactivity problem arises because the change in the law does not "impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." [citations omitted].).

presume that the United States Supreme Court is a constitutionally adequate body to protect the rights of Virgin Islands litigants through its own *certiorari* jurisdiction. Moreover, and importantly, the statute at issue in *Hamden* was directed specifically to cases initiated in the trial courts, not specifically to appellate cases, and was silent as to whether it applied to cases that had already been commenced, which harmonizes its holding with *Slack*.

Moreover, the *Bason* court failed to adequately address the subsequent U.S. Supreme Court case of *Limitaco v. Camacho*,[29] which implicitly affirmed the Ninth Circuit's holding that the statute changing *certiorari* jurisdiction from the Ninth Circuit to the United State Supreme Court impacted even pending appeals by accepting *certiorari* jurisdiction after the Ninth Circuit dismissed for lack of subject matter jurisdiction.[30] Like *Hamden*, the statute lacked an express savings clause for pending cases. Had the Supreme Court believed that *Hamden* overruled the Ninth Circuit's decision in *Santos*, it would not have accepted jurisdiction over the *Limtiaco certiorari* petition, but instead remanded the matter to the Ninth Circuit for disposition on the merits.

The legislative history of the statute also shows that Congress intended for H.R. 6116 to apply to all cases not already commenced in the Third Circuit by

---

[29] *See Limitaco v. Camacho*, 549 U.S. 483 (2007).

[30] *See id*. at 487-88.

December 28, 2012, to bring the Virgin Islands Supreme Court on par with courts of last resort of the 50 states, the District of Colombia, Guam, and the other territories.    Representative Howard Coble, the Chair of the Committee on the Judiciary's Subcommittee on Courts, Commercial and Administrative Law, to which H.R. 6116 had been conferred, stated that "H.R. 6116 adopts the third circuit's recommendation" and "simply authorizes the U.S. Supreme Court to review, at its discretion, all final judgments rendered by the Virgin Islands Supreme Court."[31]    Representative Robert Scott likewise stated that "this bill simply implements the recommendation of the third circuit judicial counsel" and that "H.R. 6116 effectuates the third circuit's recommendations by deleting from the Revised Organic Act both the provisions granting appellate jurisdiction to the third circuit and the reporting requirement."[32]    Representative Scott further stated that the drafters of H.R. 6116 had received "input . . . from the U.S. Supreme Court" and had slightly altered the bill in response to that institution's comments, and indicated that the bill was intended to provide for direct review in the same manner provided to the Guam Supreme Court.[33]    Delegate Donna Christensen, the sponsor of H.R. 6116, stated that the purpose of the bill was to "[m]ake the Virgin Islands Supreme Court just like every other high court in the United States and

---

[31] *See* 158 CONG. REC. H6363 (statement of Rep. Coble.).

[32] *See id.* (statement of Rep. Scott).

[33] *See id.*

territories."[34]    Finally, Delegate Eni Faleomavaega also stated that H.R. 6116 "simply puts into legislation a decision vetted by the judicial counsel of the third circuit."[35]

As described by these members of Congress, the Third Circuit Judicial Council Report recommended that Congress "consider legislation providing that the Supreme Court of the Virgin Islands enjoy the same relationship with the Supreme Court of the United States as do the highest courts of the several States," and at no point recommended that the Third Circuit retain *certiorari* jurisdiction over any subset of cases.[36]    No other territorial court of last resort is currently subject to the *certiorari* jurisdiction of a federal court of appeals, and none of these other courts were treated with—frankly—such disrespect when Congress determined that they were ready to take their seats as the highest local court in their respective jurisdictions.    When the Subcommittee Chair, sponsor, and other supporters of H.R. 6116 stated that the purpose of the bill was to implement the Report's recommendations by making the Virgin Islands Supreme Court like every other state or territorial court, there is no question that they intended for the U.S.

---

[34] *See* 158 Cong. Rec. H6354 (statement of Del. Christensen).

[35] *See* 158 Cong. Rec. H6355 (statement of Del. Faleomavaega).

[36] Report of the Judicial Counsel of the United States Court of Appeals for the Third Circuit on the Virgin Islands Supreme Court, reprinted on the V.I. Supreme Court's website.

Supreme Court to exercise *certiorari* jurisdiction over all *certiorari* petitions filed after the effective date of the bill and other proceedings not yet filed.

The *Bason* panel also failed to acknowledge that the U.S. Supreme Court assisted in drafting H.R. 6116. When the Supreme Court revises its own rules, and provides that they "shall govern in all cases commenced after that date," the U.S. Supreme Court does not look to the date the complaint was filed in district court to determine whether a new Supreme Court Rule applies.[37] The 2016 amendments to the appellate rules are also going to apply to all "appellate cases commenced" after the effective date of the rules change, regardless of when the case was commenced in District Court.[38] Thus, both the Supreme Court's rules the Federal Rules of Appellate Procedure apply to all appellate cases commenced after their effective date, regardless of when the case was commenced at the trial court level.

Should the Third Circuit continue to follow the *Bason* rule and exercise jurisdiction over cases with an initial civil or criminal complaint filed on or before December 28, 2012, its jurisdiction will seemingly continue indefinitely on an *ad hoc* basis of appeals on delayed cases in the trial court. Such a result is in contravention of the very purpose of the law and will permit the Third Circuit to enter opinions on old trial court cases—but long delayed in the trial court—which

---

[37] *See, e.g., Zatco v. California*, 502 U.S. 16, 17 (1991) (applying amended Rule 39 to case that had been pending in the lower court before the effective date of the amendment).

[38] *See, e.g.*, http://www.uscourts.gov/rules-policies/pending-rules-and-forms-amendments.

may contradict opinions issued in newer, non-delayed trial court cases.  This is a major practical problem because it will further delay final decisions on very old cases and create confusion in the Superior Court.  There is an *extraordinary* number of pre-December 28, 2012 cases in the Virgin Islands (like this one) that would potentially remain subject to Third Circuit *certiorari* review for a period extending far beyond the contemplation of Congress and, for that matter, far beyond any period likely contemplated by the *Bason* panel.

At present, the Superior Court has long delays in reaching a final determination on a number of cases.  According to the Virgin Islands Bar Association in its *Amicus* Brief, on average, it takes nearly 10 years for a case to make it to trial in Superior Court.  Given this lengthy timeline to bring a case to trial, an enormous backlog of cases has been created. According to the Virgin Islands Bar Association in its *Amicus* Brief, in 2014, there were over 6,000 cases pending in Superior Court, without counting traffic cases or marriages.  In 2014, 401 new civil cases were filed, but only 280 cases were resolved, so the backlog is getting worse, not better.

Given the magnitude of the backlog problem, it is likely that final judgments in certain civil cases will not be entered until more than 15 years after the complaint was filed.  Prior to H.R. 6116, 48 U.S.C. § 1613 provided that the Third Circuit would automatically lose *certiorari* jurisdiction over all cases upon the

14

passage of 15 years following the establishment of the Virgin Islands Supreme Court, *i.e.*, January 28, 2022, at the latest.  However, under *Bason's* interpretation of the "cases commenced" language, it is likely that a significant number of cases will still be under its *certiorari* jurisdiction even after the old automatic expiration date.  Under this approach, no mechanism exists to timely end Third Circuit oversight, which is an absurd result given that the purpose of H.R. 6116 is to terminate oversight *immediately* upon its passage, with the exception of pending appeals.

Should the Third Circuit continue to apply the *Bason* rule, the administration of justice in the Virgin Islands will be undermined.  The Virgin Islands Supreme Court concurrently hears appeals in cases where the complaints were filed before and after December 28, 2012.  Thus, the Virgin Islands Supreme Court will potentially issue opinions involving the same issue of both local and federal law in cases where the trial court complaint was filed prior to and after December 28, 2012.  In fact, the judges of the Superior Court are already confused as to whether they are bound to follow Third Circuit or Virgin Islands Supreme Court precedent depending on when the case was filed,[39] despite the fact that this Court is now

---

[39] *Compare Hodge v. V.I. Telephone Corp.*, 2014 WL 1508493, at *3 (V.I. Super. Ct. Apr. 11, 2014) *with Petersen v. Golden Orange Centers, Inc.*, 2014 WL 7525517, at *2 & n.2 (V.I. Super. Ct. Sep. 25, 2014).

actually asking the Virgin Islands Supreme Court for guidance about local law.[40]

The purpose of H.R. 6116 was unquestionably to establish the V.I. Supreme Court

as the final arbiter of local law and as a co-equal court among the state's highest

courts.   As it stands now, however, there is confusion and uncertainty on this

essential point because of *Bason.*

Additionally, and anomalously, the V.I. Supreme Court is not bound to even

follow this federal circuit on matters of federal law with respect to cases filed after

December 28, 2012, and can, legitimately, reject specific Third Circuit precedent

in favor of its own views on federal law.   Even under the *Bason* rule, the V.I.

Supreme Court may validly overrule (or at least reject) Third Circuit precedent on

matters of federal law with respect to cases filed after December 28, 2012.[41]   This

situation is untenable and leads to confusion about each respective court's

authority, but this is the situation that exists under the current *Bason* scheme.

Specifically relevant to this case, if the cost-bond statute is attacked as

unconstitutional in a post-December 28, 2012 case, the Virgin Islands Supreme

Court would be *completely free to disagree with any contrary decision from this*

---

[40] *See, e.g.*, *Banks v. Int'l Rental & Leasing Corp.*, 680 F.3d 296, 299 (3d Cir. 2012).

[41] *See, e.g.*, *Johnson v. Williams*, 133 S. Ct. 1088, 1098 (2013); *see also State v. Montano*, 77 P.3d 1246, 1247 n. 1 (Ariz. 2003); *People v. Dunlap*, 975 P.2d 723, 748 (Colo. 1999); *Stratos v. Dep't of Pub. Welfare*, 439 N.E.2d 778, 786 n.8 (Mass. 1982); *Cash Distributing Co. v. Neely*, 947 So.2d 286, 294 (Miss. 2007); *State v. Robinson*, 82 P.3d 27, 30 (Mont. 2003); *Lincoln Elec. Sys. v. Neb. Pub. Serv. Comm'n*, 655 N.W.2d 363, 371 (Neb. 2003); *State v. Gaitan*, 37 A.3d 1089, 1118 (N.J. 2012); *Commonwealth v. Cross*, 726 A.2d 333, 338 & n.4 (Pa. 1999); *Lundborg v. Keystone Shipping Co.*, 981 P.2d 854, 862-63 (Wash. 1999).

*Court on the same issue*, even if this Court issues a contrary opinion in this case, potentially making the statute unconstitutional for some local cases and not others, *leading to even more equal-protection problems.*   It is obviously preferable to leave constitutional-error correction, if any, on this local statute to the United States Supreme Court in this situation, as Congress intended.   Respondents request that this Court, to effectuate the intent of Congress, and in the interest of Comity and respect for the V.I. Supreme Court's rightful place as the highest court in the territory, revisit *Bason* and interpret the statute consistent with *Slack*'s mandate.

### 2.    Petitioners failed to show a "final order" from which *certiorari* jurisdiction lies.

Petitioners have the burden of establishing *certiorari* jurisdiction,[42] which generally requires a "final decision" of the V.I. Supreme Court.[43]   The standards for *certiorari* jurisdiction are different when the writ comes from a state or territorial supreme court, as opposed to a federal court of appeals.[44]   A decision from a state or territorial supreme court is "final within the meaning of the United States Supreme Court's *certiorari*-jurisdiction statute,[45] only when nothing "further

---

[42] *See* L.A.R. 112.6(a)(3).

[43] *See Defoe v. Phillip*, 702 F.3d 735, 740-42 (3d Cir. 2012); *Virgin Islands v. John*, 654 F.3d 412, 415 (3d Cir. 2011).

[44] *See Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 476-77 (1975) (citing 28 U.S.C. § 1257); *compare Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 543 (1941) (on cert. from Third Circuit Court of Appeals, interpreting 28 U.S.C. §§ 1291 and 1292.)

[45] *See John*, 654 F.3d at 415 (listing the four approved exceptions).

remains to be determined by a State court, no matter how dissociated from the federal issue that has finally been adjudicated by the highest court of the State."[46] There are only four recognized "finality" exceptions in connection with review of a state or territorial supreme-court order, and the "collateral-order doctrine" is not specifically listed as one of them.[47]

Here, Petitioners spend most of their brief arguing the merits, rather than attempting to show that this Court has jurisdiction, or why it *should* accept *certiorari* jurisdiction under the 3d Cir. L.A.R. 112.1 factors. Petitioners contend only that the "judgment denying [them] the right to a security is immediately appealable under the collateral-order doctrine." (Pet. for Writ of Cert. 2.) Whether a question is "immediately appealable" from a federal district court under the collateral-order doctrine and 28 U.S.C. § 1291 is a separate question from whether a federal court may exercise *certiorari* jurisdiction over the highest court of a state or territory.[48] The only cases Petitioners cite for the proposition that the collateral-order doctrine applies are *Cohen v. Beneficial Indus. Loan Corp.* and *Kulwicki v. Dawson*, both of which are cases originating in the federal system, and neither of which address the standards for exercising *certiorari* jurisdiction over the highest

---

[46] *See Cox*, 420 U.S. at 477.

[47] *See Defoe*, 702 F.3d at 740-42.

[48] *Compare* 28 U.S.C. § 1254 *with* 28 U.S.C. § 1257.

court of a state or territory.[49]   Petitioners have wholly failed to show that there is a "final" order for this Court to review—or even allege that one of the four authorized exceptions to finality applies[50]—as they failed to address the correct standards for exercising *certiorari* jurisdiction over an order from the highest court of the territory or even cite to the relevant cases.

It is undisputed that there is no final order in this case because the Virgin Islands Supreme Court reversed the dismissal order and remanded for further proceedings.  (Appx28.)   Even assuming the cost-bond issue should be viewed separate from the merits for purposes of the collateral-order doctrine—and even analyzing the cost-bond issue as a self-contained "claim" to resolve for purposes of appeal—if Petitioners prevailed on this writ and obtained a reversal on the constitutionality issue, the case would still need to be remanded for a hearing on the indigence issue.  (*E.g.*, Appx10, Appx13 at n.1.)   Then, if Respondents are found indigent, further legal analysis would be required on whether the statute itself contains an implied indigence exception under local law or whether one is required under the due-process clause.  (*E.g.*, Appx10, Appx13 at n.1.)   And even

---

[49] *See Cohen*, 337 U.S. at 544 ("At the threshold we are met with the question whether the District Court's order refusing to apply the statute was an appealable one."); *Kulwicki v. Dawson*, 969 F.2d 1454, 1459 (3d Cir. 1992) (direct appeal of denial of qualified immunity from district court to the Third Circuit Court of Appeals under the collateral-order doctrine and general "immunity from suit" principles.).

[50] *See Defoe*, 702 F.3d 740-41 (listing four authorized exceptions to finality without mentioning the collateral-order doctrine).

if Petitioners prevailed—and the case was again dismissed—this would prompt another round of appeals on issues wholly unrelated to the merits. Clearly, no final judgment exists under the collateral-order doctrine—even if it were a recognized exception for purposes of *certiorari* jurisdiction—and authorizing *certiorari* review would further delay resolution of the actual merits of the case.

Finally, Respondents object to allowing Petitioners to argue that one of the four authorized finality exceptions applies to this case in reply because they had the burden of establishing jurisdiction on their opening petition this will deprive Respondents of a meaningful opportunity to respond.

### III.
### THE COURT SHOULD EXERCISE ITS DISCRETION AND DECLINE TO ACCEPT *CERTIORARI* JURISICTION EVEN IF IT DETERMINES THAT IT HAS JURISDICITION

*Certiorari* review is discretionary and generally not appropriate for mere error correction. The United States Supreme Court routinely denies *certiorari* petitions even in important cases involving hotly contested federal issues.[51] Review on writ of *certiorari* is not a matter of right, but of judicial discretion, and will be granted only when there are special and important reasons to grant

---

[51] *See, e.g.,* https://www.brennancenter.org/press-release/voting-rights-victory-supreme-court-declines-hear-voter-registration-case;http://www.narf.org/nill/bulletins/sct/20162017update.html.

*certiorari*.[52]  The Local Rules spells out the considerations governing whether to grant review on *certiorari*, none of which are met here.[53]

Here the Government of the Virgin Islands—despite being a party to the case and having briefed the constitutional issue to the V.I. Supreme Court—elected not to pursue a writ with this Court.  The Government's disinterest in defending this unconstitutional statute should factor heavily in the Court's denial of the writ because it shows enforcement of the statute serves no important local or federal interest.

Moreover, the Virgin Islands Supreme Court correctly concluded that § 547 restricts access to courts, which is a fundamental right, and that § 547 did not employ the "least restrictive means" to accomplish any valid legislative purpose embodied by § 547.  (Appx.22-23.)  The Virgin Islands Supreme Court also correctly concluded that § 547, as written, violated the Equal Protection and Privileges and Immunities Clause.  (Appx.24-26.)  But even if this Court were inclined to disagree, Petitioners failed to show that the V.I. Supreme Court has decided any specific issue in a way that impermissibly conflicts with applicable decisions of this Court, other appellate courts, or the United States Supreme Court.  (Pet. Op. Br. 7-21.)  In fact, Petitioners failed to cite to any other case at all

---

[52] 3d Cir. L.A.R. 112.1.

[53] 3d Cir. L.A.R. 112.1.

addressing a constitutional challenge to this specific cost-bond statute.  (Pet. Op. Br. 7-21.)  Petitioners failed to show that: there is a split of authority between the local courts and the federal courts to resolve on whether this specific statute is constitutional; there are contrary decisions from the United States Supreme Court that address this specific statute; or that enforcement of the local cost-bond statute is anything other than a matter solely of local concern.  This Court should not accept *certiorari* for mere error correction—even if it thinks an error has been committed—which Petitioners have not shown.

Moreover, Petitioners do not allege that the V.I. Supreme Court "departed from the accepted and usual course of judicial proceedings," in any way.  (Pet. Op. Br. 7-21.)  Petitioners do not allege that the V.I. Supreme Court was conflicted or without jurisdiction to decide the appeal.  (Pet. Op. Br. 7-21.)  Petitioners do not explain why it is important for this Court to rule on the constitutionality of the local cost-bond statute or why this issue otherwise has important federal concerns beyond access to local courts.  (Pet. Op. Br. 7-21.)  Thus, there is no reason for this Court to grant *certiorari*; even of it thinks an error was committed.

Furthermore, accepting *certiorari* on this issue will continue to deny Respondents their day in court on the merits.  Petitioners correctly note that this case has "languished in the Courts of the Virgin Islands for over ten years."  (Pet. for Writ of Cert. 3.)  This unreasonable delay counsels against granting *certiorari*

on an issue unrelated to the merits and, as explained in the previous sections, that will not terminate the litigation, even if Petitioners were successful on their writ, and which will require additional proceedings unrelated to the merits before the merits can be resolved.

DATED: November 21, 2016          /s/ Lee J. Rohn
                                  Lee J. Rohn, Esq.
                                  VI Bar No. 52
                                  Rhea R. Lawrence, Esq.
                                  VI Bar No. 1192
                                  Counsel for Respondent
                                  1101 King Street
                                  Christiansted, St. Croix, VI 00820
                                  Telephone: (340) 778-8855
                                  Fax: (340) 773-2954

## CERTIFICATE OF BAR MEMBERSHIP

Attorneys for Respondent certifies that they are members in good standing of the bar of this Court pursuant to Third Circuit LAR 28.3.

DATED: November 21, 2016          /s/ Lee J. Rohn
                                  Lee J. Rohn, Esq.
                                  VI Bar No. 52
                                  Rhea R. Lawrence, Esq.
                                  VI Bar No. 1192
                                  Counsel for Respondent
                                  1101 King Street
                                  Christiansted, St. Croix, VI 00820
                                  Telephone: (340) 778-8855
                                  Fax: (340) 773-2954

## <u>CERTIFICATE OF COMPLIANCE</u>

This Response in Opposition to Petition for Writ of Certiorari complies with the type-volume limitation Fed. R. App. Proc. 32(a)(7)(B). The Response in Opposition to Petition for Writ of Certiorari contains less than 5,600 words as provided by Third Circuit LAR 112.9(b), excluding the parts of the Response exempted by Federal Rule of Appellate Procedure 32(a) (7) (B) (iii).

DATED: November 21, 2016          /s/ Lee J. Rohn
                                        Lee J. Rohn, Esq.
                                        VI Bar No. 52
                                        Rhea R. Lawrence, Esq.
                                        VI Bar No. 1192
                                        Counsel for Respondent
                                        1101 King Street
                                        Christiansted, St. Croix, VI 00820
                                        Telephone: (340) 778-8855
                                        Fax: (340) 773-2954

# ELECTRONIC FILING CERTIFICATION

This is to certify that the text of the electronic brief and the hard copies of the Response in Opposition to Petition for Writ of Certiorari are identical. A virus check was performed using AVG Anti-virus Business Edition which performs real-time scanning.

DATED: November 21, 2016             /s/ Lee J. Rohn

Lee J. Rohn, Esq.
VI Bar No. 52
Rhea R. Lawrence, Esq.
VI Bar No. 1192
Counsel for Respondent
1101 King Street
Christiansted, St. Croix
U.S. Virgin Islands 00820
Telephone: (340) 778-8855
Fax: (340) 773-2954

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on this November 21, 2016, I caused two (2) true and correct copies of the foregoing **RESPONSE IN OPPOSITION TO PETITION FOR WRIT OF CERTIORARI** to be served upon the following:

### **VIA ECF & MAIL POSTAGE PREPAID**

Stephen L. Braga
UNIVERSITY OF VIRGINIA SCHOOL OF LAW
Appellate Litigation Clinic
580 Massie Road, SL-251
Charlottesville, VA 22903-1789

DATED:  November 21, 2016     _/s/ Lee J. Rohn_
Lee J. Rohn, Esq.
VI Bar No. 52
Rhea R. Lawrence, Esq.
VI Bar No. 1192
Counsel for Respondent
1101 King Street
Christiansted, St. Croix, VI 00820
Telephone: (340) 778-8855
Fax: (340) 773-2954